Case number 15-1157, LSP Transmission Holdings, LLC et al. Petitioners v. Federal Energy Regulatory Commission. Professor Eagleman for Petitioners, Ms. Kafer for Respondent. Before we get started, you've probably noticed that there's only two of us here. Judge Wilkins had a death in the family and is out of town and will be listening to the oral argument on the tapes. So we can proceed. Good morning. I've reserved three minutes for rebuttal. May it please the Court. In 2011, FERC said it was compelled to act under Section 206 of the Federal Power Act because companies like LS Power, my client, were being excluded from competition, depriving ratepayers of the associated potential benefits that such competition would bring. We're here because FERC abandoned two of those foundational elements of Order 1000 when it came to the Southwest Power Pool. To ensure just and reasonable rates, FERC mandated a number of reforms in Order 1000, including a developer selection evaluation process to determine the developer that's entitled to use the regional cost allocation methodology for a transmission project that goes into the regional plan. In mandating that, FERC said that the evaluation criteria would evaluate the relative economics and effectiveness of performance of the alternative developers. This Court upheld Order 1000 against 43 petitioners, many of them arguing that these things didn't affect rates. This Court rejected that argument and said that Order 1000 had a direct connection to rates. The problem is when it got to implementation of Order 1000 in the Southwest Power Pool, it appears that FERC has abandoned that. We say that because in its first order on the SPP compliance filing, which has a number of generic criteria, FERC said that the criteria as apportioned do not properly measure the relative efficiency and cost effectiveness of the proposed bid. Counsel, could you start with the Commission's argument that you lack standing to raise this issue? Well, the Commission has raised an argument that we lack standing because, at least in the Commission's position, because we don't have an outstanding bid. In the Southwest Power Pool, you have to be qualified to be a transmission developer. An affiliate of my client, a subsidiary of LSP Transmission, is qualified. We can bid on anything that is subject to Southwest Power Pool qualification. Is that the project in western Kansas that you're talking about? It was. That project has since been competed and, in fact, ultimately withdrawn. Where did you raise that here? Did you raise that in your opening brief or your reply brief? We raised it in our reply brief because, frankly, we were surprised by the standing argument. We had sufficient standing with respect to Order 1000. And, again, this is the implementation of Order 1000. We had sufficient standing with respect to Order 1000 that we stood with FERC, and they granted us some of their argument time as to why these things were important. And we fully participated in all of the stakeholder processes and then in the FERC proceedings related to the compliance filing that was required from Order 1000. FERC addressed some of our arguments, didn't address some of our arguments. And then when we came to appeal, they said, well, you don't have standing because you don't have a project. And our response on the reply brief, because we were surprised, was, well, in fact, we were a participant in that. Did you submit an affidavit on that proposition? We did not submit an affidavit on that proposition. But the difficulty is their argument is that all they did was change the criteria for selecting a developer. As Order 1000 made clear, we couldn't have been a developer before Order 1000. So our standing is that this rule was directly intended to benefit us. Are you a member of the SPP? And if so, what does that mean? And does that suffice to give you standing? And is that documented anywhere? We are a member of the Southwest Power Pool. It's required to be qualified. There's been no dispute that we're a qualified entity in SPP. We were one of the bidders on the project. We didn't prevail on that project and, again, it's since been withdrawn. So there's been – So my question was, are you a member? You said yes. What does that mean? Did you have to pay for that? What does it entail? You do have to apply for membership. You do have to pay. I honestly don't know the amount that you have to pay. But that's one of the requirements to become qualified. And is that not, I take it, documented in this record? It is not documented in this record because, again, the record was mainly below as to setting up the rules. Is there somewhere below that we could look at, somewhere of public record that we could look at for that? That we're a member of SPP? No, because at the time the rules were being set up, we weren't a member because there was no qualification policy. I understand. It couldn't be until after, but there's none of the – I'm just asking. No, there's none. But your client doesn't have any pending bid proposals, right? There's nothing at SPP that's been subject to competitive bid right now. Yeah. Well, see, you would have standing – I mean, if you do submit a bid, if your client does submit a bid and loses because of these criteria, then you would have standing of challenge. But the commission's point is you're not there yet. The difficulty, Your Honor, is once these criteria are approved, then if we come back after they've been used in the way we say is improper, we're going to get a collateral attack argument that you should have appealed. No, well, I'm not sure about that, but I plan to ask the commission that. But normally the way this works is I would be surprised if the commission has a different view about this. But I assume they will say that, no, no, it's no collateral attack problem. You can challenge the legality of these criteria if they're applied to you and you are harmed as a result of them. If that was right, would you be satisfied? I don't believe it is correct. Assume for a minute I am. If that's correct, would you – does that – does that take care of this issue? I don't think it does. Why? Because this is the implementation of Order 1000. And we need to get the rules right to begin with because whether or not – what you're suggesting is the criteria would be criteria that are, in our mind, completely inappropriate. And then we've got to make the decision on whether to bid and then challenge them down the road. What we're doing is a follow-on of Order 1000. This is a compliance of Order 1000. And we definitely – there's no question we had standing for Order 1000. They never challenged it. They actually, as I said – That doesn't make any difference. Article III standing is jurisdictional. Which is that we have to have suffered an injury, and the injury is that Order 1000 is not being implemented in the manner in which Order 1000 was written. But how is it harming your client? That's the point. It might be illegal, but it has to cause harm. That's what Article III standing is all about. It has to cause an injury to your client. It causes an injury to my client because FERC is looking beyond its jurisdiction to make decisions about developers. Inconsistent with Order 1000, the very rule that they said was to benefit my client. This court, in affirming Order 1000, cited to my client evidence from my client that was put into the record. So it directly injures us in the competitive process, the very entity that was there to protect ratepayers. Well, it seems like it sets up a regulatory regime that is not as hospitable to your client as you thought, and maybe as it should be. But that's a distinct question, I think, from the standing question of whether you're harmed and whether the harm is redressable by the relief that you seek. It sets up a regulatory regime that's inconsistent with the jurisdiction of the commission. That's your legal argument on the merits. The question about your skin in the game is a question about timing and a question about your standing to raise that. We understand your merits argument that they've done something that's not consistent with Order 1000 and that you are absolutely within the group of transmission providers at which it was directed and that it should be welcomed. We understand that argument, but the question about what your skin is in the game right now is less clear. And again, there's a long line of court precedent, which we cited in our brief, that suggests that if we don't appeal this now, once they apply it in the way that they've written it, we can't appeal it. It would be a collateral estoppel. That's why I asked you whether you would be satisfied if the commission concedes or if it stands up here that that's not the case. If that's the best I have. Do you want to move on to the other issue and the standing issue, if you would? That is the right of first refusal. The commission says that the right of first refusal you're complaining about here is a question of state law and not the tariff. Again, you have to go back to Order 1000 and what it required and what it removed, which was FERC jurisdictional tariff provisions. And so the question is, is it a but-for question? But for the tariff provision that they put in, would there be competition? And could we participate? And the answer is yes. But for that tariff provision, SPP would be required to compete these projects. My client would be able to participate in those. This tariff provision says we can't do that. Now, what they base it on, we think that's an irrelevant issue as to Order 1000 because Order 1000 said you have to remove federal tariff provisions that grant a right of first refusal. This tariff provision, leaving aside why it does it, but this tariff provision gives projects to the incumbents. It's only this tariff provision. The state law may ultimately prevent somebody from developing. And this board has addressed that. Isn't that the heart of your standing problem? I mean, the commission says, let me just, in the third order the commission said, a right of first refusal based on a state law would still exist under state law, even if removed from the commission tariff. So there isn't anything this court can do to provide a remedy for you because you'll still have state law right of first refusal. We've never asked this court to address the state law. What we've asked is to. What's that? But your injury has to be under Article 3. Your injury has to be. You do have an injury here, unlike your first claim. You do. But it has to be remedial. It is remedial. How can this court remedy that? This court can remedy that by removing the tariff provision, which PERC itself said was improper. Won't there still be a state law right of first refusal? What's that? There'll still be a state law. Correct. And the provision in Order 1000 you cited, Paragraph 381, it said that. But you have to look back at what it was responding to. It was responding to an argument from a transmission owner. They said there's no such thing as a federal right of first refusal because they all derive from state law. And PERC came back and said that that argument is not availing because that will still be there. What we're addressing is what is in the federal tariff. And that's all we've asked is remove it from the federal tariff. There will be competition and we'll participate. What happens down the road? This court said in South Carolina repeatedly that there are two buckets, what PERC has jurisdiction over and what the states do, and they don't interact. Nothing that PERC was doing was countering what the state could do down the road, that those were two distinct things. Then on compliance, PERC goes, oh, state law, obviously we can't do that. It backtracks on everything they said to this court in Order 1000. Am I right that the line you're drawing between the state law that is not preempted and the federal Order 1000 scope is that, sure, a state can have as a matter of state law a right of first refusal, but it cannot thereby exclude those incumbents from having to bid competitively to meet the criteria, and only if they are the successful bidder on that do they get regional cost sharing. Is that the nature of your argument? That's exactly what the argument is, and here's why it's important. Because what PERC said in Order 1000 was that was important to rate payers, and what PERC said in response to when they changed their mind and allowed SPP to do this is we acknowledge that categorically excluding non-incumbent transmission developers from being designated to build these two categories may undermine the ability of SPP's regional transmission process to identify the more efficient cost-effective solutions and may deprive states of information which they need. So a state, for example, can choose to award a project to an incumbent under a state right of first refusal, and it could choose, for example, to have statewide cost sharing. It could choose to have just say whatever funding you can get, bid or get it, but we're going to give you this project. What it can't do, in your view, is participate under Order 1000 in regional cost sharing. Well, what it can't do is select the developer that gets that. So the answer is yes. And again, the reason this is important is because a state is, until somebody addresses it, may be within its rights to say what happens within its state, but these are regionally allocated. So if Oklahoma wants to impose what is a noncompetitive rule and say only their incumbent developer can build there, the costs are going outside that state. And that's who FERC has to protect, and that's what Order 1000, why Order 1000 made the distinction between what FERC was doing and what the states were doing. And throughout Order 1000, they made that distinction. And then they come here to SPP, and they shifted the language from reference. Are you saying that the commission could invalidate, could override the state law right of first refusal in those circumstances? No. What I'm saying is the commission has a bucket of authority that relates to rates. If you have an incumbent that wants to exercise its right of first refusal, is there any circumstances under which, in a state with a right of first refusal, I don't understand how a nonincumbent, how the issue before us here could conceivably affect that? Yes. So the answer is this. The nonincumbent could not get its bid approved. Well, that assumes that it's a firm right of first refusal. Yeah, that was my question. Well, we don't believe there are any. And there are multiple layers of this, Your Honor. First of all, it's never been tested, so we're shifting to FPP to decide what this rule means. None of these rules prohibit the competition. The question is, well, if it goes through competition, the project in Kansas was a good example. It went from $15 million planning to $8 million. So there was a huge ratepayer savings that was identified through competition. So if it goes through that, what project does the incumbent have to take? Does it have to take it with the cost caps and everything else, or does it get to go back to the $15 million? Let me just make sure that we understand one another. So if a state has right of first refusal under its own law, it could say to the incumbent who enjoys that right, you may have this project. In accepting the project, the most power we have to offer you is statewide cost sharing. Would you like the project? That incumbent might say, no, if I can't do regional cost sharing, it's not worth it to me. Right? Is that what you're envisioning? And then the probable would turn around and say, okay, consistent with our having honored the state right of first refusal, we're going to bid this regionally and take the lowest bidder. So we've satisfied the state-level right of first refusal by offering it to someone who, given the lack of federal regional cost sharing, doesn't want it. Is that what you're envisioning? It's just not clear to me entirely. The problem is that that's not the way it works. If SPP simply gives it to the incumbent due to this provision, they get regional cost sharing. Why? Because that's the way the rule is written and that's the problem. No, I'm saying, okay, I'm saying is your challenge that it should work the way I am describing it and that that's what Order 1000 would require. That is how Order 1000 would, A, honor state law, not preempt state law, and B, still hew to its commitment to its criteria for regional cost sharing. It's very close to what I'm saying, but we don't think it's relevant what the state says. It shouldn't go to the state first to determine whether they're going to allow their incumbent to have it. FERC has a bucket of authority, which is over here. And it said it wasn't dealing with the states, and they've shifted from Order 1000. They've chosen not to preempt the states also. Exactly. And I guess the question is, and this is following up on Judge Tatel's question, if there is state authority to have such a right and the state chooses to have such a right and FERC has not preempted that right, then its discussion of rights of first refusal has to be within its jurisdictional federal arena. And I'm just trying to understand how that could be consistent with your position. Yes, consistent with my position. What FERC has the authority to do and all it has the authority to do is determine who has regional cost allocation. Throughout Order 1000, it said it had nothing to do with site. And our position is FERC should maintain that and it shouldn't let the state decide who gets regional cost allocation. The way in which the tariff works is you have competition for that. SPP wants to avoid that and simply give the project to the incumbent with regional cost allocation, and we say that's inappropriate. You have to have the competition. If we lose, fine. If we win, we have regional cost allocation. Okay, thanks. I will hear from the commission now. Good morning, Your Honors. Holly Kafer for the commission. It seems like I should start where you all started in the first instance with standing. Good idea. And on that, I wanted to provide reassurance to you specifically, Judge Tatel, who asked whether the commission would agree that there would be no collateral attack issue if Ellis Power waited until a ripe case where it has an injury, for instance, where an application is denied, and that is correct. We would not raise collateral attack there. In fact, I couldn't, right? I mean, they would have standing. They would have Article III standing. Right. If they lost a bid, and if it was attributable to the overweighting concern they have, they would clearly have Article III standing, right? I think that's correct. Okay, all right. And I guess the only other thing on standing is that it's not clear to me that Ellis Power has demonstrated any harm from just that delay, which is something else we could look at. And, of course, we cite Alabama Municipal Distributors Group in our brief, 312F3, 470, for the proposition that even if there were the possibility of collateral attack, that wouldn't be enough to establish an injury here. On the topic of redressability, in their brief at page 62, and I think actually this morning at argument as well. You're moving on to right of first refusal now. Is that what you're now talking about? Right. Well. I mean, isn't your point on standing with respect to the criteria? There's just no injury? I do think that the injury, the lack of injury, does apply also to the right of first refusal. Oh. But that's what you're now moving on to, right? Right. So redressability applies only to the right of first refusal. That was the distinction that we drew. There was a lack of injury as to the entirety of the case. There's a lack of redressability as to just the state and local laws, the right of first refusal. And on that topic, I think it's pretty clear that Ellis Power acknowledges that it's state and local law that would, in fact, prohibit it from owning and constructing a project. It's not the federal tariff itself. What about the way of thinking about it that I was talking about with Mr. Engelman? I mean, my understanding was that it's not the state law that creates the harm. It's the way FERC is treating the state law and the extra mojo that it's affording the state law by saying, when a state does this thing, we, too, will treat it as complying, as trumping the otherwise competitive process. And that's going beyond state law. So on that point, I think the key is that Ellis Power, sorry. Okay, I want to refer the court to Klamath Water Users Association, which we also cite in our brief, where the petition was dismissed because the harm actually arose from the independent authority of the states. What Ellis Power hasn't shown here is how prohibiting it from competing for a project, which it could never build or construct, harms it. In fact, I think suggestions were made in the record that that would save it money in the end because it wouldn't be competing for a project that it could never construct. Well, I think its position, and I don't want to put words in Mr. Engelman's mouth, but I think its position is everybody wants regional cost sharing. FERC controls that, not the states. A state can say, we honor your right of way, we honor your, you know, our licensing provisions have to be dealt with. Indeed, we even have a right of first refusal, which an incumbent in our state can call down. But the incumbent is going to look at that and say, if that doesn't get me into the big league where I'm going to get regional cost sharing, I don't particularly want it. And then the injury is reversible because then Mr. Engelman's clients are going to say, you know what? We do because we can qualify for regional cost sharing because we can meet the competitive criteria. And that seems to me to be straight up addressable. My understanding is that in Southwest Power Pool, when a project is selected in the first half of its process where it identifies the actual project, the regional transmission solution, the more effective cost efficient solution, any project that comes out of that process is eligible for regional cost sharing. And that the regional cost sharing, that the competitive process... But there was an incumbent in the state with a right of first refusal, and the incumbent, and there's an incumbent. Then what? Right. Then you have to be eligible within FERC's terms to be a successful bidder on a project that is on the slate of potential projects, right? Those don't all get billed. They get billed only if they're bidded out. And the question is, can FERC then allow a state right of first refusal to trump a bidder's... the requirement that a bidder meet the competitive criteria? And I think that's a federal law issue. That is not a state law issue. It may be a federal law issue, and then we go back to what the scope of the case is. And that's compliance with Order 1000. And as Your Honor has recognized, Order 1000 expressly declined to preempt state law. And LS Power does not ask this court to declare any particular state law preempt. And as I'm envisioning it, it does not require preemption of state law. State law is intact. State law just doesn't... the tail of state law doesn't wag the dog of federal eligibility in the way that the compliance order would allow it to. Yeah. I mean, again, the only harm that I can conjure, and I don't think that LS Power has spoken directly to this, but the only thing that seems tied to the point that you're making is the possibility that LS Power could compete for a project that it would never be eligible to build. LS Power has not addressed... No, no, no. They're saying we're going to compete for a project because by confining the state right of first refusal to benefits that the state has the power to confer, and shearing away from them benefits that only FERC would have the power to confer and that FERC may not, consistent with Order 1000, confer, there are going to be a lot fewer takers. There are going to be a lot fewer incumbents who want to exercise their right of first refusal, in which case there will be plenty more projects for us to bid on. I think I take it that that's their position and that it's quite redressable. I guess I didn't see that position expressed in their briefs, Your Honor. Can you go back and just explain how this works? At the first phase, they pick the project, and the projects they select in the first phase get cost sharing, right? Cost allocation. Right. Correct? Then they go to the second and they pick who's going to build it, right? Right. Now, if there's an incumbent in a state with a right of first refusal, that incumbent is going to get the project, correct? Correct. If certain requirements are met, yes. Uh-huh. Well, can a non-incumbent compete against an incumbent in a state with a right of first refusal? I think it depends. So this is where we get into what the state law says actually matters and why we haven't addressed that to date, because we don't have a specific state law that we're trying to address here. I've seen some state laws that say, and I think these are in LS Power's statutory addendum, that say things like, if the project is solely located within the utility's retail service territory, then it has. And so that's why I'm saying there do seem to be some limitations on that. So is that why the commission's argument is, look, there's really still no injury at this point, right? Right, right. And that's because of what? Until it has, under New York Regional Interconnect, it needs to wait until it has applied for a project and been denied. If it applies for a project in a state with a right of first refusal and the incumbent is also applying, does it have any chance of getting that project? Subject to whatever, let's just assume that that project falls within whatever the state law provides, and then no, probably not. And so here's the decision point that they could appeal. So if it's injured now, it can't apply in any state where there's an incumbent? It would be injured at the point where Southwest Power Pool makes the determination that a project will not be put into the transmission owner selection process for competition. And that's the decision point that LS Power could then challenge. That's where you're focusing on injury. How is it any riper then than it is now? What more facts have been developed at that stage? What more do we know about the operation of the rule? I mean, as you yourself said, a lot of people will have wasted a lot of time putting bids together and a lot of money putting bids together to get to that stage. If we just know it's an operation of law, it's going to happen. Actually, no bids would have been put together at that point because what I'm referring to is the point where Southwest Power Pool decides whether or not to put the project into competitive solicitation. So if it decides not to put the project into competitive solicitation because an incumbent is exercising a state right of first refusal, then no one would be preparing any bids for that project. Presumably the incumbent will have put together a package saying we want it and this is what we propose or not. The record hasn't really addressed what that process is. It could be a notification. We know that the regional state committees, the RSCs, are heavily involved in working with SPP to determine the scope of state law and how that works in that process. There's a back and forth with SPP and its various committees to make that decision. Again, that is the point at which LS Power would be harmed and could challenge it. Going back to the first question about the criteria and whether LSP has standing to challenge them as not sufficiently adhering to the cost priority, the priority that Order 1000 places on the cost to consumers, if they had promptly presented the contract on which they were bidding in their opening brief, would that keep them standing? I don't think so. It seems like we may not have enough facts at this point to make the determination about whether that project they bid for is enough to establish injury. I'm particularly concerned that that project was ultimately canceled. And so that might have rendered, even if they did have standing at that point, that might have rendered the case moot. I thought maybe you were going to say we don't know whether the criteria play a role. Well, and that's the other thing. Right. So there should be a report that discusses, I think, how the various bids lined up in that process. And LS Power did not offer any arguments about how the criteria actually impacted its proposal and whether the impacts of the criteria line up with the arguments that it's making concerning the criteria here. We just don't know. Go ahead. Sure. I mean, perhaps we should move on to the merits. Sure. And, you know, I think the key point that I can make on Order 1000 is that Order 1000 was always limited. The key paragraph, well, it's actually in a footnote, is footnote 231 of JA201, which makes very, very clear that state law is not preempted and that federal tariffs cannot create a right of first refusal. That's the federal right of first refusal, but references are still allowed. And that is really all that the Commission has allowed here. And when you say references, tell me a little bit more about what FERC understands that to mean. Exactly what happened here, and that is that the tariff can acknowledge that state law exists and that it has a role, what the Commission said, is that it does have a role to play in the process. So, you know, the other point that I wanted to make about Order 1000, and perhaps even beyond the reference to state law, is that even the limit on the federal right of first refusal, even the provision on the federal right of first refusal, was limited. And that's something that this Court acknowledged to some extent in South Carolina. There was always the federal right of first refusal was retained for local projects and for certain projects invoking reliability. In Southwest Power Pool, in the orders that are currently here on review and on something that Alice Power does not challenge, reliability projects with a short lead time are still subject to the federal right of first refusal. Maintenance, upkeep, upgrades also? Upgrades also, yes. Thank you, Your Honor. And that's all in South Carolina as well. And, you know, the point is that Order 1000 was never quite as expansive as I think Alice Power had hoped it might be. And that's what we see in the implementation here. If, just back to the merits on the five criteria, if the Southwest Power Pool had adopted a point system that focused on minimizing the risk that a project would overrun its budget, would that system be consistent with Order 1000? It's difficult to say, but that sounds like a very narrow standard. The criteria that Southwest Power Pool actually adopted concerned things like reliability and design and, you know, other factors that do relate to cost, absolutely, but that take into account other aspects of the developer's knowledge and expertise experience. One thing that troubles me about the five criteria is it does seem like there's some double counting in terms of reliability in the criteria that's the most cost-related. And in the criteria as a whole, there are already sort of belt and suspenders on and you have to have some assurance against cost overruns and delays. And then the additional criteria, it seems, are justified by the same reasoning. And so it seems very, very conservative. And just to put it out on the table, the concern, I think, is that FERC is reverting back to a situation in which the tried and true, the experience, those with a track record, a.k.a. the incumbents, are the ones that qualify under these criteria because there's so much waiting on avoiding various forms of unknowns or risk. Can you respond to that? Do you know what I'm referring to about the double counting in the assurances? Are you suggesting that there's double counting, let me just see if I can clarify, double counting within the five criteria? Or are you referencing the qualification eligibility, that separate process? Within the five criteria. Within the five criteria. Well, one, I don't know that that's an argument that LS Power has made. But setting that aside, I do see each of the criteria as quite distinct. And so just to list them out, reliability, quality, and general design are all one. That allows avoiding outages, among other things, which the commission found is directly tied to rates. Construction project management, showing that you have experience with that, shows that you would be able to avoid delays, which is directly connected to rates. Operations, maintenance, and safety, here we're talking about restoring after an outage. The commission found that's directly connected to rates. And I think it's worth also considering two things in particular. One is that the Seventh Circuit did find that the criteria were all directly connected to rates. And LS Power does not suggest that there's any distinction between the criteria here and those there. I guess more particularly what I'm thinking about is in calculating the expected cost, the industry panel is supposed to take all risks into account, so in the expected cost criterion. So cost analysis should include consideration of, quote, cost certainty. And if that's already counted in the cost analysis, then all these other things that you're talking about, risk of outages, project management, those seem to me to be more detailed ways of talking about cost certainty. So I guess the question is, and this is just sort of pushing what I take to be LSP's argument, they're saying you should be more focused on cost. And you're saying, well, all these other things have to do with cost. And, you know, maybe to put words into their mouth, they might say, well, no, but in asking for certainty with respect to cost, you've already built in to your cost criterion what they argue are non-cost criteria. The general design, the avoidance of outages, the project management, it's going to be on time. Those can be reduced to cost certainty, can they not? So if there's a concern that the process is duplicative, I guess the commission's response would be that that doesn't render it arbitrary and capricious or inconsistent with Order 1000. Let me just push you a little bit more on that, and then I'll let you sit down. But to the extent that you have defended what they call non-cost criteria as, in fact, cost-related, the argument I take it is if we have unexpert people doing this, if we have poor management, if we have outages, those affect cost, right? And we care about that because we care about cost to consumers. We care about the quality of service at the cost. But if that's true, by your very reasoning, those things affect cost. A shorthand way of putting that is they bear on the certainty that that cheap bid that we're getting is real. But you've already said we're demanding cost certainty right up front. So then that feeds into their argument, yeah, so these are something else. I think that if you look at the record and see the discussion that's required from a bidder on each of the criteria, the purpose of the other four criteria is to require the developer to fully discuss how it's going to achieve the cost certainty that is required to be addressed in the actual rate analysis criteria. So the other point I would want to make is that, just real quickly, the last one, is that LS Power hasn't objected to the inclusion of some non-cost criteria, to use its own language, here. And so what we're really looking at then is whether it should be 22% or 75%. And to me, and particularly under Niagara Mohawk Power Corporation, 452 F3rd 822 at 828, they've already crossed that line in acknowledging that some non-cost criteria are acceptable, and then it's up to the Commission's expertise to determine how much. Okay. Thank you. Thank you. Mr. Engelman, I think you are out of time, but we'll give you two minutes if you'd like it. I'll be very brief, thank you. On the right of first refusal, I think you can see it most clearly in the shift in FERC's language. In Order 1000, it said reference state law. In the second order at JA 2472, it said recognize state law. In their brief, they said SPP must comply with state law. SPP does not have to comply with state law as to who gets regional cost allocation. FERC does, and that's our point. On the evaluation criteria, our concern is exactly as was identified. There's no substantial evidence. Wait a second. You said SPP doesn't have to comply with state law, FERC does? Is that your position, or is that what you take the compliance order to require? I said SPP doesn't have to comply with state law in determining who gets regional cost allocation. That's a FERC issue. I'm sorry. I was trying to rush, and I wasn't clear. What I'm saying is, whether it has a competition or not, that's a purely FERC issue. It is not a state law issue. Yet in their brief, they say SPP must comply with state law. SPP is not building a thing. It gives nobody a right to build a thing. It gives one party a right to regional cost allocation. Okay, just explain to us once more. If FERC selects in the first phase a project for regional cost allocation, and an incumbent with the state right of first refusal applies, how are you injured? Not how are you injured, but how can we remedy that injury? Just answer that for me. Yes, FERC is the only party that can determine who gets regional cost allocation. What they've done is— But if your client can't get the project because there's an incumbent exercising its right of first refusal, even if FERC can't do that, how is your client harmed? That's one of the problems we've identified, is they've shifted from the state to decide later down the road after somebody has regional cost allocation to SPP. As was said by FERC's counsel, if SPP decides, then we may have an issue. But that shifts to the Federal Energy Regulatory Commission, and then back up to this court to decide what state law means. But how do you harm your client if under state law you can't compete? If truly under state law we can't compete, we might not be able to compete. We're being deprived— You're harmed, but what can we do about that? You can remove the provision, and then we can get the provision in the tariff that allows SPP to— But FERC says in its order that without regard to that, state law will still govern. But it said that in Order 1000 to say nothing we're doing in Order 1000 is treading on state law. Now they're coming back and saying, oh, we can't do that because it would tread on state law. It's the exact opposite of what they told this court. All right. Do you have one more sentence? Two more sentences? Go ahead. I took up some of your time. Go ahead. Yeah, I didn't have an opportunity to talk about the evaluation criteria because we— Just take two minutes, or one minute. Go ahead. On the evaluation criteria, our issue is exactly as was asked FERC about, related to whether or not what are referred to as non-cost criteria. They go back and forth on whether they're cost criteria or non-cost. SPP says they're cost. Down the road, actual cost. Okay, then they should be measurable. And then you can decide based on measurement. But then they back away and say that the non-cost categories work to mitigate the uncertainties inherent in the cost estimates. And what we're saying is none of those things are measuring things that are relevant to rate payers, which is what Order 1000. And the court is correct that the rate category encompasses all of those things, evaluate the developer's cost to construct, own, operate, and maintain a selected project. That's in the rate category. So what we've asked consistently is tell us how these other categories relate to that. We gave a specific example, none of which FERC replied to. What's your best case for the court requiring quantification rather than just non-arbitrary reasoning in its argument that these criteria relate to cost? I think the best case is we haven't asked for quantification. What you said, they should be measurable. They should be measurable in a way within FERC's jurisdiction, which means something to rate payers. Well, I think their judgment is, and I have to say it's hard to question that, their judgment is things like experience, reliability do cash out. I mean, if I'm a customer and I'm hiring someone to do some construction work, I don't just look at the bottom line number. I look at all those other kinds of things because otherwise I'm going to end up with a mess. And so to the extent that that's their reasoning and you're pushing on that reasoning, you're saying, no, it has to be measurable. And maybe it's illuminating that I said quantifiable and you said no. What do you mean? What we are saying is it needs to be measurable in some way. What FERC's jurisdiction is limited in, and this court said an agency would be arbitrary and capricious if it relied on factors outside that Congress didn't intend. Congress intended rates and matters affecting rates. And so what we're saying is tell us how these things affect rates, and then what the criteria are supposed to do is measure the relative difference between people as to how they affect rates. And that's the quantification. It's in their own rule. Measure the relative economics. Isn't that just going to be somewhat, it's going to be measurable, but it's going to be in a more anecdotal, more qualitative way? This person has 15 years of experience and only one disaster. This other party has 10 years of experience but has never had any mishaps. And you don't know in advance what kind of, you mean. But does any of that make a difference to rate payers? Yeah. It can, but the question is, is there a way to review that so that it does? And the problem in this case, there's no substantial evidence that they're going to review it in a way that it actually does have an impact on rate payers. And that's our whole thing. This is a substantial evidence. All we've asked is to send it back to FERC to get the substantial evidence. Okay, thanks.
judges: Tatel, Pillard, Wilkins